CARL SROUFE AND DOLORES SROUFE, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Sroufe v. Commissioner
Docket Nos. 10005-93, 10006-93, 10889-93
United States Tax Court
T.C. Memo 1995-256; 1995 Tax Ct. Memo LEXIS 257; 69 T.C.M. (CCH) 2870; June 12, 1995, Filed *257 Decisions will be entered under Rule 155 in docket No. 10005-93, for respondent in docket No. 10006-93, and for petitioner in docket No. 10889-93. For Carl and Dolores Sroufe, petitioner: Michael P. Kelly. For Thelma Sroufe, petitioner: Howard Alan Kave. For respondent: Louis H. Hill. DAWSON, GOLDBERG
DAWSON; GOLDBERG
MEMORANDUM OPINION DAWSON, Judge: These consolidated cases were assigned for trial to Special Trial Judge Stanley J. Goldberg pursuant to section 7443A(b)(4) and Rules 180, 181, and 183. [2] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE GOLDBERG, Special Trial Judge: By separate notices of deficiency, respondent determined the following deficiencies in and additions to petitioners' Federal income taxes: Docket *258 No. 10005-93 Carl and Dolores Sroufe
Taxable Year
Deficiency
1986
$ 3,513.40
Docket No. 10006-93 Carl and Dolores Sroufe
Taxable Year
Deficiency
Sec. 6653(a)(1)
1988
$ 8,399.64
$ 419.98
Docket No. 10889-93 Thelma Sroufe
Taxable Year
Deficiency
Sec. 6651(a)(1)
Sec. 6653(a)(1)
Sec. 6661
1986
$ 3,288
$ 822 ---   -0- 1988
24,940.60
-0-
$ 1,247.03
$ 6,235.15
After concessions, [3] the issues for decision are: (1) Whether payments made by Carl Sroufe (Mr. Sroufe) to Thelma Sroufe (Thelma) in 1986 and 1988 were alimony as defined by section 71; (2) whether Carl and Dolores Sroufe are liable for an addition to tax under section 6653(a)(1) for taxable year 1988; (3) whether Thelma is liable for an addition to tax under section 6651(a)(1) for taxable year 1986; (4) whether Thelma is liable for an addition to tax under section 6653(a)(1) for taxable year 1988; and (5) whether Thelma is liable for an addition to tax under section 6661 for taxable year 1988. *259 Some of the facts have been stipulated and are so found. The stipulations of facts and attached exhibits are incorporated herein by this reference. At the time the petitions were filed in these cases, Thelma resided in Portsmith, Ohio, and Mr. Sroufe resided in Georgetown, Ohio. Mr. Sroufe and Thelma married for the first time in 1945. In 1946, after the birth of their first child, they divorced. In 1948 they remarried and during that year had a second child. During their second marriage, Mr. Sroufe owned substantial real estate on which he housed sharecroppers, grew soy and tobacco, and raised cattle and other livestock. Mr. Sroufe also owned and operated Sroufe Machinery Sales, a company engaged in the sale of new and used farm equipment and machinery. In 1966, Mr. Sroufe and Thelma separated. Mr. Sroufe remained in the family home while Thelma moved in with relatives. Without notifying Thelma, Mr. Sroufe filed for a divorce in 1973 in Las Vegas, Nevada. Thelma did not participate in the divorce proceedings and the issues of alimony and property settlement were not addressed. Mr. Sroufe was granted a divorce by default by the Eighth Judicial District Court for Clark *260 County, Nevada. At all times relevant herein, Mr. Sroufe was a resident of Ohio. In 1983, Thelma was in need of financial assistance due to her increasing medical bills, and, as a result, decided to obtain a divorce and property settlement from Mr. Sroufe. It was at this time that Thelma was first made aware of the divorce proceedings in Nevada. On November 7, 1983, Thelma filed a declaratory action in the Brown County, Ohio, Court of Common Pleas (Court of Common Pleas) to determine the validity of the Nevada divorce decree and a declaration of her property rights. On April 29, 1985, after extensive settlement negotiations, Mr. Sroufe and Thelma agreed to settle the action, and, after placing their agreement on the record with the Court of Common Pleas, executed a Memorandum of Understanding (Memorandum). The Memorandum provides: This memorandum of agreement this 29th day of April, 1985 by and between Carl Sroufe and Thelma Sroufe witnesseth that the parties hereto have agreed as follows: * * * [The action] will be dismissed with prejudice, that the defendant [Mr. Sroufe] will pay to the plaintiff [Thelma] the sum of Seventy Five Thousand Dollars ($ 75,000.00) on or before *261 forty five (45) days from this date and in addition thereto will pay the plaintiff's taxes on the Seventy Five Thousand Dollars ($ 75,000.00); and the plaintiff agrees to income average for the past five years for that purpose. In addition thereto the defendant will pay to the plaintiff the sum of Ten Thousand Dollars ($ 10,000.00) per year for and as alimony which will be paid annually on the anniversary date of [$ 75,000] payment, for 10 years guaranteed and secured. In addition thereto the defendant will pay to the plaintiff the sum of Three Thousand Seven Hundred and Fifty Dollars ($ 3,750.00) payment on her attorney fees. The costs will be divided between the parties.
Shortly after signing the Memorandum, Mr. Sroufe realized that he would not be able to deduct the payments to Thelma required in the Memorandum because the payments did not satisfy the statutory definition of alimony found in section 71(b). As a result, he requested that the Memorandum be restructured for this purpose. On September 25, 1985, the Court of Common Pleas issued a Judgment Entry that provides in relevant part: The parties hereto have agreed to submit this issue to an assigned Judge for the *262 purpose of restructuring the agreement to fulfill the requirements of the Internal Revenue Service for Defendant to deduct all payments as alimony but to afford Plaintiff the same economic after tax value as was agreed upon originally.
This Judgment Entry was signed by the attorneys for both Thelma and Mr. Sroufe. On January 21, 1986, the Court of Common Pleas issued a Decision and Order that, pursuant to the Judgment Entry of September 25, 1985, restructured the agreement contained in petitioners' Memorandum. The restructured agreement (the Agreement) provided that Thelma was entitled to the same economic value she would have received under the Memorandum, and, therefore, obligated Mr. Sroufe to pay $ 21,401.39 to Thelma every year for 10 years. This amount was calculated by taking the present value of the amount Thelma would have received under the Memorandum ($ 175,000) at a rate of 10 percent amortized over a 10-year period. The first payment was due on January 1, 1986, and, in order for the payments to be deductible as alimony, the Agreement provided that Mr. Sroufe's obligation to pay Thelma would cease on January 1st of the year following her death. Mr. Sroufe was *263 displeased with the decision of the Court of Common Pleas adopting the Agreement. Because he believed that the Agreement required him to pay almost $ 40,000 more than he would have had to pay under the Memorandum, Mr. Sroufe appealed the decision. On May 13, 1986, while the appeal was pending with the Court of Appeals for the Twelfth Appellate District of Ohio, Mr. Sroufe issued Thelma a check in the amount of $ 21,402. On the front and the back of this check, Mr. Sroufe wrote "alimony paid pursuant to court order". On August 25, 1986, the Court of Appeals dismissed Mr. Sroufe's appeal because the Decision and Order of the Court of Common Pleas issued on January 21, 1986, incorporating the Agreement was an advisory opinion and not a final appealable order. The Court of Appeals based its ruling on the fact that neither the Memorandum nor the Agreement determined the questions posed by the declaratory action filed by Thelma in 1983; namely, the validity of the Nevada divorce and the status of Thelma's property rights in Ohio. On December 16, 1987, in response to the ruling by the Court of Appeals, the Court of Common Pleas issued an Opinion and Entry (the Opinion) that provided: *264 The litigants in this action entered into a memorandum of understanding on the 29th day of April, 1985. The question before this Court is whether this memorandum constitutes a full and complete settlement of this case. The litigants were both represented by well qualified attorneys, the attorneys and their clients endorsed said memorandum and the initial payment was made by the Defendant [Mr. Sroufe]. It is therefore the judgment and order of this Court that the memorandum of understanding be attached to this Entry, that the Defendant, Carl Sroufe, has personally guaranteed the payments set forth in the memorandum of understanding. The Defendant is given 45 days to make the 1986 and 1987 payments with interest at the legal rate of 10%. It is further the order of this Court that the future payments shall be due on the 29th of April of each year beginning April 29, 1988. It is further the order of this Court that the memorandum of understanding be attached to this Entry and constitute a full and complete settlement of all matters in controversy and that this case * * * is dismissed with prejudice toward both parties. Costs to be divided between the parties.
A week later, *265 the Court of Common Plea entered an Amended Entry in which it required that the first full payment due and payable in 1985 ($ 75,000) be paid within 45 days of the Court's Entry of December 16, 1987, with interest calculated thereon from June 13, 1985, at the legal rate of 10 percent. By Judgment Entry dated January 21, 1988, Mr. Sroufe was ordered to deposit $ 91,605.25 with the Clerk of the Court, representing the initial payment of $ 75,000, plus the 1986 and 1987 payments of $ 10,000, with interest accrued, less a credit of $ 21,402 for the payment of that amount which he had made to Thelma in 1986. Four days later, the Clerk of the Court issued a check payable to Thelma and her attorney in the amount of $ 91,525.67. [4] On the back of the check, the Clerk typed "Acceptance of and full settlement of the first three years payment pursuant to Memorandum of Agreement and Judgment Entry filed Jan. 21, 1988". *266 On his 1986 Federal income tax return, Mr. Sroufe claimed a deduction of $ 21,402 for alimony. On his 1988 Federal income tax return, based on the calculations of his accountant, Mr. Sroufe claimed a deduction of $ 30,000 for alimony and an itemized deduction for interest paid to Thelma in the amount of $ 18,008. [5] Thelma did not report any portion of the funds received from Mr. Sroufe as alimony income. In her notices of deficiency, respondent challenged both parties' positions. Respondent determined that Mr. Sroufe failed to establish that he was entitled to deductions for alimony as claimed on his 1986 and 1988 returns; however, respondent allowed a portion of Mr. Sroufe's itemized deduction for interest paid to Thelma. With regard to Thelma, respondent determined that she failed to report alimony income in the amounts of $ 21,402 for 1986, *267 and $ 91,525.27 for 1988. At trial, respondent took no position on either issue other than to request consistent treatment for both parties. [6]
Under section 215, payments are deductible as alimony or separate maintenance if those payments are includable in the recipient's gross income under section 71. . Section 71(b) provides a four-step inquiry for determining whether a cash payment under a written Agreement is alimony: (b) Alimony or Separate Maintenance Payments Defined. -- For purposes of this section -- (1) In general. -- The term "alimony or separate maintenance *268 payment" means any payment in cash if -- (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument, (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215, (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.
The payments made by Mr. Sroufe to Thelma will be treated as alimony, and will be deductible by Mr. Sroufe, only if all four criteria of section 71(b) are satisfied. The first criterion is that the payment must be received by, or on behalf of, a spouse or former spouse under a divorce or separation instrument. Sec. 71(b)(1)(A). To determine whether this criterion is satisfied, *269 we must decide under which instrument the payments by Mr. Sroufe to Thelma were made. The first payment was made by Mr. Sroufe on May 13, 1986, in the amount of $ 21,402. This amount equaled the annual payment required by the Agreement. While it may appear at first glance that the payment was made pursuant to the Agreement and qualifies as alimony, the facts and circumstances surrounding this case indicate otherwise. Mr. Sroufe appealed the decision incorporating the Agreement on the ground that it did not properly represent the settlement between the parties. After the appeal was dismissed, the Court of Common Pleas declared the Memorandum to be the instrument by which all issues were settled and ordered Mr. Sroufe to pay all amounts due under the Memorandum to date with interest thereon. In calculating the total amount then due under the Memorandum, the Court reduced his obligation by $ 21,402 to reflect the payment in 1986. Looking beyond the form of the payment to the substance of the transaction, we conclude that both the 1986 payment of $ 21,402 and the 1988 payment of $ 91,605.25 were made under the terms of the Memorandum. The Court of Common Pleas clearly stated in *270 its Opinion and Entry of December 16, 1987, that the Memorandum was the controlling instrument. The Court noted that the payments under the Memorandum were guaranteed and gave Mr. Sroufe 45 days to pay Thelma the amount due to date. Moreover, the Court credited Mr. Sroufe with the 1986 payment in calculating the amount due for the 1988 payment. Having determined that the payments made by Mr. Sroufe in 1986 and 1988 were made pursuant to the Memorandum executed by the parties on April 29, 1985, we must decide whether the Memorandum is a "divorce or separation instrument" as required by section 71(b). A divorce or separation instrument is defined by section 71(b)(2) as "(A) a decree of divorce or separate maintenance or a written instrument incident to such a decree, (B) a written separation agreement, or (C) a decree (not described in subparagraph (A)) requiring a spouse to make payments for the support or maintenance of the other spouse." In this case, there exists a dispute regarding the validity of the Nevada divorce decree. In Thelma's declaratory action, she requested a declaration as to the validity of the Nevada divorce and the status of her property rights with respect *271 to her marriage to Mr. Sroufe. The Opinion and Entry of the Court of Common Pleas on December 16, 1987, clearly stated that the Memorandum executed by the parties on April 29, 1985, "constitutes a full and complete settlement" of the case. Accordingly, the Memorandum qualifies as "a written separation agreement" or as a "written instrument incident to" a divorce decree. The second criterion is that the instrument may not designate that the payment is not includable by the payee spouse or deductible by the payor spouse. Sec. 71(b)(1)(B). As petitioners acknowledged at trial, the Memorandum executed on April 29, 1985, does not so designate. The third criterion is that the payee and payor spouses cannot be members of the same household when the payment is made. Sec. 71(b)(1)(C). At the time the payments at issue were made, and since 1966, Mr. Sroufe and Thelma lived in separate households. The fourth criterion is that the payor spouse must not be liable for any payment under the agreement after the death of the payee spouse. Sec. 71(b)(1)(D). Although the term "alimony" is used in the Memorandum to characterize the payments at issue, nothing in that instrument suggests that *272 Mr. Sroufe's obligation would cease upon Thelma's death. To the contrary, the payments were specifically required to be guaranteed and secured by Mr. Sroufe. Therefore, petitioners concede that under the Memorandum the payments would not have ceased upon Thelma's death. Instead, in the event of Thelma's death prior to Mr. Sroufe's fulfillment of his obligations, he would be required to continue such payments to her estate. Based on the foregoing, we hold that the requirements of section 71(b) have not been satisfied and, as a result, the payments under the Memorandum do not qualify as alimony. As such, the payments are not includable in Thelma's gross income and are not deductible by Mr. Sroufe. Respondent determined that Thelma is liable for the addition to tax under section 6651(a)(1) for filing her 1986 Federal income tax return after the due date. This section provides for an addition to tax in the amount of 5 percent of the amount of the tax if the failure to file is for not more than 1 month, with an additional 5 percent for each month in which the failure to file continues, to a maximum of 25 percent. The addition to tax is applicable unless it is shown that the failure *273 to file is due to reasonable cause and not due to willful neglect. We are unable to determine from the record exactly when Thelma's return was filed. However, because we hold that Thelma did not receive alimony required to be included in her gross income, she is not liable for the deficiencies determined by respondent and owes no tax liability for the taxable year 1986. As such, she is not liable for an addition to tax under section 6651(a)(1). Respondent also determined that Thelma was liable for additions to tax under sections 6653(a)(1) and 6661 for taxable year 1988. Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment if any part of an underpayment of tax was due to negligence or intentional disregard of rules or regulations. Section 6661(a) provides for an addition to tax in the amount of 25 percent of any underpayment attributable to a substantial understatement of tax. Because we hold that Thelma is not liable for an underpayment for taxable year 1988, she is not liable for the additions to tax under sections 6653(a)(1) or 6661. With regard to Mr. Sroufe, respondent determined that he is liable for an addition to tax under section 6653(a)(1) *274 for the taxable year 1988. As noted above, section 6653(a)(1) applies if any part of an underpayment is due to negligence or intentional disregard of rules or regulations. Negligence is defined by section 6653(a)(3) as the failure to exercise the due care of a reasonable and ordinarily prudent person under similar circumstances. . Based on his testimony, Mr. Sroufe was well informed about the statutory definition of alimony. He has conceded that payments under the Memorandum would not terminate upon Thelma's death. Consequently, he should have recognized that those payments fail to satisfy sec. 71(b)(1)(D) and thus are not deductible by him as alimony. We hold that Mr. Sroufe's underpayment of tax in 1988 was due to negligence and/or intentional disregard of the rules or regulations. Accordingly, Mr. Sroufe is liable for the addition to tax as determined by respondent. To reflect the foregoing, Decisions will be entered under Rule 155 in docket No. 10005-93, for respondent in docket No. 10006-93, and for petitioner in docket No. 10889-93. Footnotes
1. Consolidated herewith are the following cases: Carl Sroufe and Dolores Sroufe, docket No. 10006-93, and Thelma Sroufe, docket No. 10889-93.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Respondent determined that Carl and Dolores Sroufe were not entitled to a deduction for legal and professional fees in the amount of $ 7,256 for 1986. At trial, respondent allowed $ 6,408 for legal and professional fees, and Carl and Dolores Sroufe conceded the remaining disallowance.↩
4. The record does not indicate the reason for the difference between the amount ordered to be deposited by Mr. Sroufe and the amount of the check payable to Thelma.↩
5. Sroufe was allowed to deduct 40 percent of this amount, or $ 7,203, on the Schedule A attached to his 1988 Federal income tax return. See sec. 163(d)(6)(B), (h)(5).↩
6. The Commissioner's practice of issuing inconsistent deficiency notices in such circumstances in order to protect the Government's right to tax revenue is recognized as a valid practice. See, e.g., , affg. in part and revg. in part .↩